THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

VAN DU ZEE, INC.

> **Plaintiff,**

> v.

VIGILANT INSURANCE CO., *et al.*,

> **Defendants.**

CIVIL NO. 12-1806 (JAG)

<u>OPINION AND ORDER</u>

GARCÍA-GREGORY, D.J.

Before the Court is Vigilant Insurance Co.'s ("Vigilant"), Federal Insurance Co.'s ("Federal Insurance"), and DTC Engineers & Constructors, LLC's ("DTC") motion for summary judgment under Fed. R. Civ. P. 56. Defendants ask the Court to dismiss Plaintiff's complaint with prejudice and to grant DTC's and Federal Insurance's counterclaim. For the reasons discussed below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

<u>BACKGROUND</u>

On September 28, 2012, Van Du Zee, Inc. ("Van Du Zee" or "Plaintiff") filed this breach of contract suit under Article 1210 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 3375 and Article 1230 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31 § 3451. (Docket No. 1). Plaintiff claims that

Defendants are jointly and severally liable for failing to pay Plaintiff under Plaintiff and DTC's subcontract agreement (the "Agreement") and the payment bond that Vigilant and Federal Insurance issued on behalf of DTC. Defendants filed a counterclaim, demanding amounts associated with correcting and completing Plaintiff's deficient work. (Docket No. 13). On January 15, 2014, Defendants filed a motion for summary judgment. (Docket No. 24).

About a month later, Plaintiff's counsel moved to withdraw from representation for Plaintiff's failure to provide adequate factual information to oppose Defendants' motion for summary judgment. (Docket No. 28). Plaintiff subsequently failed to comply with the Court's orders and deadlines to retain new counsel and to show cause why the case should not be dismissed for lack of prosecution. (Docket Nos. 29, 30). To date, Plaintiff has not filed an opposition to Defendants' motion.

## STANDARD OF LAW

A motion for summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is in genuine dispute if it could be resolved in favor of either party, and it

is material if it potentially affects the outcome of the case.
Calero-Cerezo v. U.S. Dep't of Justice, 355 F. 3d 6, 19 (1st Cir.
2004).

The party moving for summary judgment bears the burden of
showing the absence of a genuine issue of material fact. Celotex
Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving
party has properly supported [its] motion for summary judgment,
the burden shifts to the nonmoving party . . . ." Santiago-Ramos
v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir.
2000) (citing DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir.
1997)). The nonmovant must demonstrate "through submissions of
evidentiary quality[] that a trial worthy issue persists."
Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)
(internal citations omitted).

In evaluating a motion for summary judgment, the court
"must view the entire record in the light most hospitable to the
party opposing summary judgment, indulging in all reasonable
inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.
2d 112, 115 (1st Cir. 1990). The court may safely ignore
"conclusory allegations, improbable inferences, and unsupported
speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.
2d 5, 8 (1st Cir. 1990). It is important to note that,
throughout this process, courts cannot make credibility
determinations or weigh the evidence, as these are jury

functions and not those of a judge. <u>Anderson v. Liberty Lobby</u>, <u>Inc.</u>, 477 U.S. 242, 255 (1986).


## <u>THE FACTS</u>

On September 8, 2009, DTC and the U.S. Army Corps of Engineers ("the USCE" or "Owner") entered into a contract (the "Prime Contract") for the design and construction of the Armed Forces Reserve Center at Fort Buchanan, Puerto Rico ("the Project"). (SUF ¶ 5).[1] Federal Insurance issued a bond on behalf of DTC in connection with the Prime Contract and the Project. (<u>Id.</u> ¶ 6). DTC in turn entered into the Agreement with Van Du Zee and conveyed its rights thereunder to Federal Insurance as security for its bond. (<u>Id.</u> ¶¶ 7-8).

After beginning work on the Project, Van Du Zee submitted a claim to Federal Insurance for $41,700.00, which Van Du Zee later amended to $88,500.00, comprised of amounts allegedly due by DTC under the terms of the Agreement. (<u>Id.</u> ¶¶ 14-15). Part of that claim was for change orders. DTC never approved any change orders in writing as required by the Agreement. (<u>Id.</u> ¶¶ 38, 40-41). After it had exercised its right to complete the Project, Federal Insurance denied the $88,500.00 claim due to

---

[1] All facts are drawn from Defendants' Statement of Uncontested Facts, Docket No. 24-1 ("SUF"), unless otherwise noted. Because Plaintiff did not oppose Defendants' motion for summary judgment, the Court ordered that Defendants' facts be deemed admitted. (See Docket No. 40).

CIVIL NO. 12-1806 (JAG)                                              5

deficiencies in Van Du Zee's work. (Id. ¶¶ 9, 20). Two days later, Federal Insurance informed Van Du Zee of certain deficiencies in its work, and Van Du Zee, though it agreed to correct them, ultimately never returned to the Project site to do so. (Id. ¶¶ 21-23).

Van Du Zee's work was deficient for several reasons: DTC paid $4,136.00 to Van Du Zee's labor and materials suppliers because Van Du Zee failed to pay them; when Van Du Zee abandoned the Project, it owed over $30,000.00 to material suppliers; the Project's Architect/Engineer never certified that Van Du Zee completed its work; and the USCE could not accept beneficial occupancy of the Project in the state that Van Du Zee left its work. (Id. ¶¶ 16-19, 30).

Under the Agreement, Federal Insurance and DTC could, at their option, terminate Van Du Zee for default for failure to cure deficient work within three days of receiving written notice of the deficiencies. (Id. ¶ 24). Such notice of default triggered Federal Insurance's and/or DTC's right to terminate Plaintiff. (Id.). On January 20, 2012, Federal Insurance gave Van Du Zee formal notice of Van Du Zee's failure to perform under the Agreement and Federal Insurance's intention to

terminate Van Du Zee's right to complete the Agreement.[2] (Id. ¶ 28). Van Du Zee did not correct the deficient work within three days, and on February 10, 2012, Federal Insurance formally declared Van Du Zee in contractual default and terminated its right to proceed under the Agreement. (Id. ¶ 29).[3] The Agreement further provided that this notice and termination "shall be final and binding unless, within five (5) business days of receipt, [Van Du Zee] files a notification in writing of its intent to arbitrate the controversy" under the terms of the Agreement, and that failure to file this notification constitutes "an absolute bar and complete waiver of Subcontractor's right to recover on account of such claim."[4] (Id. ¶¶ 32, 36). Van Du Zee never filed those notifications following Federal Insurance's denial of its claim, notice of Federal Insurance's intent to declare contractual default, or its actual declaration of default. (Id. ¶¶ 33-35).

---

[2] We note that SUF ¶28 cites the date of this correspondence as January 12, 2012. However, based on the exhibit cited, this appears to be a typographical error. The mistake is not material and so the Court adopts the date on the exhibit cited.

[3] We note that SUF ¶29 cites the date of this correspondence as February 14, 2012. However, based on the exhibit cited, this appears to be a typographical error. The mistake is not material and so the Court adopts the date on the exhibit cited.

[4] We note that Defendants' motion quotes the Agreement as establishing a fifteen day period to notify Plaintiff's intent to arbitrate a decision by the contractor. We assume, however, that this is a typographical error as the contract provides that Plaintiff has ten days to submit a claim as to which Contractor shall issue a decision, and five days to file notification of its intent to arbitrate that decision. (Agreement § 9(b)). The difference is immaterial to this Court's ruling.

After retaining Project consultants and construction managers to investigate the work that needed to be corrected and/or completed, Federal Insurance retained contractor Consigli Construction, Co. ("Consigli") to correct and complete Van Du Zee's deficient work. (Id. ¶¶ 10-11). Consigli in turn subcontracted Terrasol Engineering Group, LLC ("Terrasol") to perform the aforementioned work. (Id. ¶ 12). The total amount that Federal Insurance has expended to correct and complete the work is $210,349.78. (Id. ¶ 44).

## ANALYSIS[5]

Construction contracts are interpreted using the same rules for contract interpretation generally. The parties' intent governs "the determination of the parties' rights and obligations under the contract." Levine v. Advest, Inc., 714 A. 2d 649, 656 (Conn. 1998). Where the contract language is clear and unambiguous, its plain meaning determines the parties' intent. DeCarlo and Doll, Inc. v. Dilozir, 698 A. 2d 318, 321 (Conn. App. 1997). Contract language is clear and unambiguous where it "has a definite and precise meaning . . . concerning

---

[5] As a preliminary matter, we note that the agreement at the center of this dispute includes a choice of law provision providing that the Agreement "shall be governed by and construed in accordance with the laws of the State of Connecticut without regard to conflict of law principles." (SUF ¶ 37). Accordingly, we apply Connecticut law to this case.

which there is no reasonable basis for a difference of opinion." Levine, 714 A. 2d at 657 (internal quotations omitted).

Whether summary judgment may be granted in this case thus turns on whether the parties' intent is clear from the contract and whether the relevant provisions are otherwise enforceable.

I.  Dismissal of Plaintiff's Complaint with Prejudice

Plaintiff's claim for $88,500.00 under the Agreement has three components: (i) $32,000.00 for delay damages, (ii) $14,800.00 for change orders, and (iii) $41,700.96 for final payment (the original contract amount minus the money already received by Plaintiff and any payments made on Plaintiff's behalf).[6]  Defendants argue that these claims are all contractually barred and should be dismissed with prejudice. The Court agrees. We address each of these components below.

A. Plaintiff's Claim for Delay Damages

Under § 6(d) of the Agreement, in the event that DTC or the USCE delay Plaintiff's performance, Plaintiff is entitled to an equitable extension of time from the USCE as the "sole and exclusive remedy" for such delay. (Docket No. 24-4, Agreement § 6(d)). These provisions are valid under Connecticut law. See, e.g., FCM Group, Inc. v. Miller, 17 A. 3d 40, 63 (Conn. 2011)

---

[6] The Court is mindful that the amounts for these three claims do not add up to the total amount alleged by Plaintiff. It is, however, irrelevant, given our ruling.

(quoting <u>United States ex rel. Straus Systems, Inc. v. Associated Indemnity Co.</u>, 969 F. 2d 83, 85 (5th Cir. 1992)) ("A provision in the contract for an extension of time in case of delay caused by the contractor has been held to afford the subcontractor an exclusive remedy, precluding the recovery of damages from the contractor.").

Here, no evidence shows that either DTC or the USCE delayed Plaintiff's performance under the Agreement, so an equitable extension of time is unavailable to Plaintiff. By the terms of the Agreement, Plaintiff has no available remedy for delay damages.

Section 6(d) also provides that "[i]n no case shall Subcontractor be entitled to any . . . damages or additional compensation as a consequence of such delays . . . unless, as a condition precedent, Owner is liable and pays Contractor for such delays." (Agreement § 6(d)). No-damage-for-delay clauses are "generally valid and enforceable and . . . not contrary to public policy." <u>White Oak Corp. v. Dept. of Transportation</u>, 585 A. 2d 1199, 1203 (Conn. 1991).[7] Plaintiff has neither alleged nor offered any evidence to establish that the actions of DTC or the USCE prompted its claim for delay damages. The Court thus finds

---

[7] We note that this general rule is subject to four exceptional circumstances, which are neither raised by the parties nor applicable here. <u>White Oak Corp.</u>, 585 A. 2d at 1203.

CIVIL NO. 12-1806 (JAG)                                                          10

that Plaintiff's claim for $32,000.00 in delay damages must be dismissed with prejudice.[8]

### B. Plaintiff's Claim for Change Orders

Plaintiff claims $14,800.00 for damages resulting from change orders. Section 7(a) of the Agreement generally prohibits Plaintiff from recovering damages resulting from change orders, "unless such order is given IN WRITING and is signed by an OFFICER OF THE CONTRACTOR." (Agreement § 7(a), emphasis in original). Section 7(a) also provides that in the event that Van Du Zee did not meet these conditions, it agreed to "waive any claim for extra compensation or time extension therefor or on account thereof . . . except as provided under the Prime Contract Documents or if the Contractor actually receives payment for same from Owner." (Id.).

These types of contract clauses are valid and enforceable where the relevant language is explicit. See O'Keefe v. Corporation of St. Francis's Church, 22 A. 325, 327 (Conn. 1890). By Plaintiff's own admission, DTC never gave written approval for any change orders. (SUF ¶ 41). Since the change order provision is enforceable and its requirements have not been met, the Court dismisses Plaintiff's claim for $14,800.00.

---

[8] Given our ruling, we need not reach the issue of whether Plaintiff is precluded from claiming an equitable extension of time.

CIVIL NO. 12-1806 (JAG)                                              11

C. <u>Plaintiff's Claim for Final Payment</u>

Plaintiff claims $41,700.96 for final payment allegedly due under the Agreement. Under § 2(f) of the Agreement, Plaintiff becomes entitled to final payment upon fulfilling ten conditions. Since the issue of Plaintiff's entitlement to payment hinges on whether it has fulfilled these conditions, we limit our discussion here to the four conditions on which we find that Plaintiff has defaulted.

Plaintiff has defaulted, first, on § 2(f)'s requirement that "Subcontractor's work [is] accepted by [the USCE] and [DTC and/or Federal Insurance]." (Agreement § 2(f)(i)). As Defendants point out, Plaintiff has provided no evidence to establish that its work was accepted by the USCE or DTC. On the other hand, the following evidence establishes that Plaintiff's work was not accepted by DTC: Federal Insurance denied Van Du Zee's change orders claim and informed Van Du Zee of the deficiencies in its work, leading to that denial; Van Du Zee itself recognized additional deficiencies in its work, and, though it agreed to submit a solution, never returned to the Project site to correct those deficiencies; and Terrasol ultimately corrected and completed Van Du Zee's deficient work.

Second, Plaintiff has defaulted on § 2(f)'s requirement that it provide "satisfactory proof of payment of all amounts"

it owed under the Agreement. (Agreement § 2(f)(iii)). It is uncontested that Van Du Zee owed over $30,000.00 to material suppliers in connection with the Agreement. Indeed, in light of these outstanding debts and Plaintiff's awareness that its work was never accepted, it would have been impossible for Plaintiff to provide proof of payment. As such, Plaintiff has defaulted on this condition.

Third, § 2(f) requires that Plaintiff's work "is complete as confirmed by Architect/ Engineer." (Agreement § 2(f)(v)). No such confirmation occurred. (SUF ¶ 19). Plaintiff has thus defaulted on this condition.

Fourth, Plaintiff has defaulted on § 2(f)'s requirement that the USCE accept "beneficial occupancy of the Project" as a result of Plaintiff's performance under the Agreement. (Agreement § 2(f)(x)). Simply put, this never happened. (SUF ¶ 30).

As established above, Plaintiff has not fulfilled several of the Agreement's conditions for final payment.[9] Plaintiff is

---

[9] Because we find that several of § 2(f) requirements were not met, we need not decide whether the fact that Plaintiff had outstanding debts at the time it abandoned the Project violates § 2(f)(ii)'s requirement that Plaintiff execute and deliver "a complete and final release of Contractor, Owner and Contractor's Surety," and waive or release all lien rights. (Agreement § 2(f)). For the same reason, we need not decide whether Federal Insurance's requiring a schedule for correction of deficiencies and an explanation of certain repairs was reasonable such that Van Du Zee's subsequent failure to provide the same violates § 2(f)(viii)'s requirement that Van Du Zee submit

CIVIL NO. 12-1806 (JAG)                                             13

therefore not entitled to final payment in the amount of $41,700.96. This claim will be dismissed.

II.  Final and Binding Declaration of Plaintiff's Default and Waiver of Plaintiff's Claims and Defenses

Defendants argue that because Federal Insurance's declaration of Van Du Zee's default is final and binding, Plaintiff has, as a result, waived its claims under the Agreement, which stipulates that controversies will be arbitrated or waived. (Agreement § 9(b)).

Whether the parties intended to form an arbitration agreement is a question of law. Nussbaum v. Kimberly Timbers, Ltd., 856 A. 2d 364, 369 (Conn. 2004); Levine, 714 A. 2d at 657. Written agreements to arbitrate disputes are "valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." Conn. Gen. Stat. Ann. § 52-408.  Here, we find no such cause that would render this provision invalid.

Moreover, it is undisputed that Plaintiff did not submit notice of its intent to arbitrate within five days of being served with Federal Insurance's declaration of default. The Court therefore finds that Federal Insurance's decision

---

"such other documents . . . as Contractor may reasonably require . . ." (Agreement § 2(f)).

CIVIL NO. 12-1806 (JAG)                                                14

constituted a final and binding declaration of Plaintiff's default.

Whether Plaintiff waived its claims and defenses, as Defendants argue in their motion, is usually a matter of fact, but may be established through "clear and definitive contract language . . . as a matter of law." One Country, LLC. v. Johnson, 49 A. 3d 1030, 1034 (Conn. App. Ct. 2012). In Pero Bldg. Co., Inc. v. Smith, 504 A. 2d 524 (Conn. App. Ct. 1986), the Appellate Court of Connecticut upheld a general contractor's contractual waiver of his right to file a mechanic's lien on the property that was the subject of the construction. Id. at 526. Specifically, the lower court's refusal to grant a discharge of the plaintiff's mechanic's lien was held erroneous "because the language of the agreement between the parties was clear and definitive and . . . the intention of the parties was unmistakable." Id. at 527.

Here, the Agreement provides that "[f]ailure of Subcontractor to submit timely its notice of claim or notice of intent to arbitrate shall constitute an absolute bar and complete waiver of Subcontractor's right to recover on account of such claim."[10] (Agreement § 9(b)). The language is clear and

---

[10] The Court is mindful that Pero involved waiver of mechanic's liens rather than waiver of all claims in connection with certain work. However, Pero did not purport to limit itself to the context of mechanic's liens in addressing contractual waiver as a matter of law. Indeed, the Connecticut Supreme Court

unambiguous, as it establishes explicit requirements for Plaintiff to recover damages for its work under the Agreement. It also lays out a clear cause-and-effect relationship: Plaintiff's failure to adhere to those requirements as to a particular claim results in a waiver of that claim. It is undisputed that Plaintiff did not submit timely notice of the claims it now attempts to recover. Plaintiff has thus waived these claims.

III. DTC's and Federal Insurance's Counterclaim

In their counterclaim, DTC and Federal Insurance claim that Plaintiff is liable for the costs, expenses, and attorneys' fees that they incurred as a result of Plaintiff's default under the Agreement. Section 4(b) of the Agreement delineates Van Du Zee's liability for certain categories of damages upon "any failure of Subcontractor . . . to perform." (Agreement § 4(b)). Under § 4(b) of the Agreement, Van Du Zee is liable to DTC and/or Federal Insurance for "(1) liquidated damages and other delay . . . ; (2) Contractor's increased costs, liquidated or actual, of performance, . . . resulting from Subcontractor caused delays or improper Subcontractor work; (3) warranty and rework costs; (4)

---

has cited Pero in the context of contractual waiver of a guarantor's subrogation rights. Connecticut Nat. Bank v. Douglas, 606 A. 2d 684, 691 (Conn. 1992). Pero is therefore binding.

CIVIL NO. 12-1806 (JAG)                                             16

liability to third parties; and (5) attorney's fees and related costs." (Agreement § 4(b)). Once again, the contract language is clear and unambiguous: Van Du Zee's failure to perform results in its liability for the damages specified in § 4(b). As held above, Plaintiff has failed to perform as a matter of law. As such, the Court finds Plaintiff liable under the Agreement.

As to the amount of damages, Plaintiff is liable for the amounts that Defendants reasonably expended to complete and correct the deficient work minus the unpaid part of the original contract price. Levesque v. D & M Builders, Inc., 365 A. 2d 1216, 1218 (1976) (holding that for construction contracts involving defective or unfinished construction, the proper measure of damages is the reasonable cost of completing the project minus the unpaid part of the original contract price). Here, Federal Insurance has spent $210,349.78 correcting and completing Plaintiff's work. The Court, however, is not in a position to rule on the reasonableness of this amount. Defendants' motion is therefore denied as to the amount of damages, and will be referred to a magistrate judge for a hearing on damages.

CIVIL NO. 12-1806 (JAG)                                              17

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' complaint shall be dismissed with prejudice. As to Defendant's counterclaim, Defendant's motion for summary judgment is granted as to Plaintiff's liability and denied as to the amount of damages. This case shall be referred to a magistrate judge for a hearing on damages. Partial Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 7th day of August, 2014.

S/ Jay A. García-Gregory
JAY A. GARCÍA-GREGORY
United States District Judge